United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 21, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-32243 |
| SPEEDCAST INTERNATIONAL | § | |
| LIMITED, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

SpeedCast and Inmarsat entered a series of contracts during their long business relationship. The last of those contracts terminated all claims Inmarsat may have against SpeedCast except for any "Permitted Claims." Inmarsat argues SpeedCast owes a "Shortfall Amount" under one of their contracts as a Permitted Claim. For the reasons set forth below, SpeedCast owes no Shortfall Amount.

## BACKGROUND

Inmarsat Global Limited and its affiliates operate a satellite network that provides communications services. (ECF No. 1640 at 2). For many years, SpeedCast International Limited and its affiliates distributed Inmarsat's maritime communication services. (ECF No. 1640 at 2). Inmarsat delivered the maritime services to SpeedCast under various Master Service Agreements. (ECF No. 1640 at 2). These agreements set forth the services Inmarsat would provide SpeedCast, the charges for the services, and the parties' respective obligations. (ECF No. 1562 at 3). The parties also entered a "Strategic Alliance Agreement" on June 10, 2016. (ECF No. 1640 at 2). Under the Strategic Alliance Agreement, SpeedCast received a thirty percent discount on Inmarsat's services. (ECF No. 1640 at 2–3). Additionally, SpeedCast had to meet certain

minimum targets for deploying Inmarsat's satellite services at the end of each calendar year or it was obligated to pay a Shortfall Amount. (ECF No. 1640 at 3).[1]

SpeedCast and its affiliated debtors commenced chapter 11 cases on April 23, 2020. (ECF No. 1532 at 2). On November 13, 2020, the parties entered an "Asset Sale Agreement" and a "Deed of Termination and Release" in which SpeedCast agreed to transfer most of its Inmarsat maritime customer contracts to Inmarsat in exchange for a payment and a mutual release of claims except for certain "Permitted Claims."[2] (ECF No. 1640 at 4). The Permitted Claims are:

> [A]ny claims for payment by an Inmarsat Entity for services delivered by the relevant Inmarsat Entity to a SpeedCast Entity after 23 April 2020 under, and otherwise on the terms of, any *Existing Agreement* or the *Surviving Agreement*, including any applicable interest, fees or costs relating to such payment claims which are, or become, due and payable under the terms of the relevant Existing Agreement or the Surviving Agreement (as applicable).

(ECF No. 1629-1, Exhibit E at 5) (emphasis added). The Strategic Alliance Agreement and the relevant Master Service Agreements are either an Existing Agreement or the Surviving Agreement. (ECF No. 1629-1, Exhibit E at 4, 6).

SpeedCast did not meet its minimum target for 2020. (ECF No. 1640 at 6). Inmarsat issued a shortfall invoice of $2,161,890.00 on March 31, 2021 and filed an administrative expense claim on April 9, 2021. (ECF No. 1640 at 6). SpeedCast disputes that it owes the Shortfall Amount. (ECF No. 1641).

---

[1] The parties stipulated that all of the services Inmarsat provided SpeedCast were described in and controlled by the Master Service Agreements: "The Inmarsat Services were provided to Speedcast prior to the Petition Date under various master service agreements . . . ." (ECF No. 1640 at 2). The Strategic Alliance Agreement varied the amount that SpeedCast was obligated to pay for those services.

[2] The Asset Sale Agreement and Deed of Termination and Release terminated the Strategic Alliance Agreement and most of the distribution agreements effective January 1, 2021. (ECF No. 1640 at 5). The Court approved this transaction on December 11, 2020. (ECF No. 1640 at 5).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Proceedings affecting the debtor-creditor relationship are core proceedings under 28 U.S.C. § 157(b)(2)(B). Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

This dispute is a matter of contract interpretation. The parties disagree whether the shortfall amount under the Strategic Alliance Agreement is a Permitted Claim.

The parties agree that services were delivered under Master Service Agreements. (ECF No. 1640 at 2). They also agree that the Strategic Alliance Agreement varies the price terms of the Master Service Agreements by the inclusion of a noncontingent thirty percent discount and a contingent shortfall amount. (ECF No. 1640 at 2–3).

Based on the documents filed by the parties, there is no dispute that Inmarsat invoiced for post-petition services under its Master Service Agreements and that Speedcast paid the amount invoiced by Inmarsat. Inmarsat seeks to recover the Shortfall Amount solely by asserting an administrative claim arising under the Strategic Alliance Agreement. Inmarsat does not seek to recover any unpaid amounts under the Master Service Agreements. Accordingly, the Court must answer only the narrow question of whether a Shortfall Amount under the Strategic Alliance Agreement is a Permitted Claim under the Deed of Termination and Release.

Under the Deed of Termination and Release, a Permitted Claim is one "for services delivered . . . under, and otherwise on the terms of . . . any Existing Agreement or the Surviving Agreement . . . ." The phrase "under, and otherwise on the terms of" implies that the services must be delivered both "under" and "otherwise on the terms of" an Existing Agreement or the Surviving Agreement to qualify as a Permitted Claim. *See Velazquez v. Countrywide Home Loans Servicing (In re Velazquez)*, 660 F.3d 893, 897 (5th Cir. 2011) ("[T]he word 'and' is often construed as

conjunctive."); *Bruce v. Fist Fed. Sav. and Loan. Ass'n of Conroe, Inc.,* 387 F.2d 712, 715 (5th Cir. 1988) ("The word 'and' is therefore to be accepted for its conjunctive connotation rather than as a word interchangeable with 'or' except where strict grammatical construction will frustrate clear legislative intent."); *Am. Bankers Ins. Grp. v. U.S.*, 408 F.3d 1328, 1332 (11th Cir. 2005) ("[U]nless the context dictates otherwise, the word 'and' is presumed to be used in its ordinary sense, that is, conjunctively."); *Crank v. Fed. Emergency Mgmt. Agency*, Case No. CV 18-410-BAJ-EWD, 2019 WL 9899509, at *3 (M.D. La. Aug. 8, 2019). *Cf. Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co. of Tex.*, 142 Tex. 630, 180 S.W.2d 906, 908 (1944) (noting that "and" and "or" are typically not interchangeable, but "and" may be interpreted as "or" where necessary to "effectuate the manifest intention of the user."). Additionally, a court's primary concern in construing a written contract is to ascertain the parties' true intent as expressed in the contract. *Valence Operating Co. V. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)); *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

The parties' dispute whether they intended to release SpeedCast from any Shortfall Amount when they entered the Deed of Termination and Release. Without the guidance of mutual intent nor reason to depart from the ordinary interpretation, "and" is conjunctive in the Permitted Claim definition.

Inmarsat delivered its services under the Master Service Agreements, not the Strategic Alliance Agreement. The Shortfall Amount arises under the terms of the Strategic Alliance Agreement. Because the services were not delivered "under" the Strategic Alliance Agreement, the "terms of" the Strategic Alliance Agreement are irrelevant to the resolution of this dispute. The services were delivered both "under" and "otherwise on the terms of" the Master Service

Agreements, but the Master Service Agreements provide no basis upon which Inmarsat may seek the Shortfall Amount. Because (1) no services were delivered under the Strategic Alliance Agreement; (2) a Permitted Claim is one for services delivered under, and otherwise on the terms of an Existing Agreement or the Surviving Agreement; and (3) the Master Service Agreements do not provide for a Shortfall Amount, Inmarsat's shortfall claim is not a Permitted Claim as defined in the Deed of Termination and Release.

## CONCLUSION

A separate order will be entered.

SIGNED 12/21/2021

Marvin Isgur
United States Bankruptcy Judge