United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 15, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-32243 |
| SPEEDCAST INTERNATIONAL | § | |
| LIMITED, *et al.*, | § | CHAPTER 11 |
| | § | |
| Debtors. | § | |
| | § | |
| CATHERINE YOUNGMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 22-3019 |
| | § | |
| PETER SHAPER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

  This lawsuit alleges that Peter Shaper breached his fiduciary duty to Speedcast International Limited. The Trustee originally filed the lawsuit in state court, but Mr. Shaper removed it to this Court. The Trustee moved to abstain and remand back to state court. Mandatory abstention is unwarranted, but the Court will permissively abstain and remand.

### BACKGROUND

  The Trustee alleges that Mr. Shaper disregarded fiduciary duties while serving as a director and CEO of Speedcast. (ECF No. 3 at 2). Mr. Shaper allegedly breached his fiduciary duties in an effort to enrich himself and his private equity firm, Genesis Park, LLC. (ECF No. 3 at 2).

  Mr. Shaper joined Speedcast as a director and board member on September 26, 2019. (ECF No. 3 at 7). Joe Spytek, who also worked at Genesis Park, joined Speedcast as a director and board member at the same time. (ECF No. 3 at 7). The Trustee alleges that in December 2019, Mr. Shaper and Mr. Spytek sent a letter to Speedcast's board calling for Speedcast's aggressive

turnaround and proposing that Speedcast's CEO, Pierre-Jean Beylier, resign or remain as CEO in name only. (ECF No. 3 at 10). Mr. Beylier resigned on February 4, 2020. (ECF No. 3 at 10). Mr. Shaper became Speedcast's CEO and Spytek became Speedcast's Chief Operating Officer in early March 2020. (ECF No. 3 at 10).

On March 31, 2020, Speedcast's board formed a Special Restructuring Committee (the "SRC"). (ECF No. 3 at 12). After "declining revenue, difficulty integrating recent acquisitions and realizing projected synergies, and [the start of] the COVID-19 pandemic," Speedcast filed for bankruptcy on April 23, 2020. (ECF No. 3 at 13). Mr. Shaper and Mr. Spytek remained CEO and COO.

Shortly after Speedcast's bankruptcy filing, Mr. Shaper allegedly drafted a management incentive plan outlining his and Mr. Spytek's benefits upon Speedcast's emergence from bankruptcy. (ECF No. 3 at 15). The incentive plan included compensation packages and investment opportunities for Mr. Shaper, Mr. Spytek, and Genesis Park. (ECF No. 3 at 15).

The Trustee alleges that Mr. Shaper and Mr. Spytek sought to help Centerbridge Partners, L.P.—a private equity firm—acquire Speedcast at a lower price by avoiding a competitive auction. (ECF No. 3 at 15). Speedcast's largest creditor, Black Diamond Capital Management, L.L.C., held over half of Speedcast's outstanding secured debt through a syndication facility. Black Diamond had the right to direct the syndicate's agent to credit bid for the syndicate's collateral. A successful credit bid would have disrupted the Centerbridge sale. (ECF No. 3 at 16).

Mr. Shaper and Mr. Spytek allegedly did not want a competitive auction because, among other reasons, they were worried that they would lose their positions. (ECF No. 3 at 16). The Trustee alleges that Mr. Shaper and Mr. Spytek threatened to resign and they led an "anti-Black

Diamond effort." (ECF No. 3 at 16–17). They also proposed a more aggressive incentive plan "designed to scare off Black Diamond." (ECF No. 3 at 17).

Despite Mr. Shaper and Mr. Spytek's efforts to deter Black Diamond, it submitted a bid for Speedcast with three to four times more value for prepetition creditors than Centerbridge's offer. (ECF No. 3 at 21). Mr. Shaper and Mr. Spytek failed to sway the SRC to back Centerbridge. (ECF No. 3 at 21). On August 24, 2020, Mr. Shaper and Mr. Spytek submitted resignations with the caveat that they would reassume their positions if, by August 28, Speedcast adopted a reorganization plan that included (i) management incentives and (ii) the ability for Genesis Park to invest in the reorganized Speedcast. (ECF No. 3 at 22).

The SRC called Mr. Shaper's bluff, and his resignation became effective on August 28, 2020. (ECF No. 3 at 22). However, the SRC asked Mr. Spytek to rescind his resignation. (ECF No. 3 at 22). Mr. Spytek did so on the condition that Speedcast not hold a "full blown auction." (ECF No. 3 at 22).

The SRC did not accept Black Diamond's August 31 offer, and it rejected Black Diamond's subsequent bids. (ECF No. 3 at 24). Speedcast filed a second chapter 11 plan on November 25, 2020 that incorporated a revised bid from Centerbridge. (ECF No. 3 at 25). The Court gave Black Diamond another opportunity to bid. (ECF No. 3 at 26). Black Diamond declined. (ECF No. 3 at 26).

On January 20, 2021, Speedcast filed a plan incorporating a settlement agreement between it, Centerbridge, and Black Diamond. (ECF No. 3 at 27). According to this agreement, Centerbridge would acquire Speedcast, and Speedcast would waive claims against the SRC members, Mr. Spytek, and others, but not Mr. Shaper. (ECF No. 3 at 27). The Syndicated Facility Agreement lenders, through the Syndicated Facility Agreement Litigation Trust Agreement, which

was incorporated into the plan, retained the right to pursue claims against Mr. Shaper. (ECF No. 3 at 27).

The Trustee asserts four causes of action against Mr. Shaper. Each alleges that he breached fiduciary duties or attempted to help Mr. Spytek breach his fiduciary duties. (ECF No. 3 at 28–36). The lawsuit alleges that Mr. Shaper owed fiduciary duties to the bankruptcy estate, to Speedcast, and to Speedcast's creditors. (ECF No. 3 at 28). Mr. Shaper allegedly breached these duties by improperly obstructing the Black Diamond bid to enrich himself, Mr. Spytek, and Genesis Park. The Trustee also alleges that Mr. Shaper improperly directed the Debtor's bankruptcy attorneys to implement a transaction furthering his personal agenda. (ECF No. 3 at 29). These breaches injured Speedcast and Speedcast's creditors via a "depressed recovery and the incurrence of tens of millions in wasteful professional expenses." (ECF No. 3 at 29).

On January 7, 2022, the Trustee filed a complaint in Texas state court. (ECF No. 1 at 3). On February 7, 2022, Mr. Shaper removed the state court action to this Court. (ECF No. 1). On March 9, 2022, the Trustee moved to remand. (ECF No. 20). The Court held a hearing on the motion to remand on June 13, 2022 and took the matter under advisement.

## DISCUSSION

State court suits involving claims relating to a bankruptcy case may be removed to the bankruptcy court. *See, e.g.*, *Khan v. Hakim,* 201 F. App'x 981, 983 (5th Cir. 2006). Once before the bankruptcy court, a party has multiple avenues to get the proceeding remanded to state court: (i) mandatory abstention under 28 U.S.C. § 1334(c)(2); (ii) permissive abstention under 28 U.S.C. § 1334(c)(1); or (iii) equitable remand under 28 U.S.C. § 1452(b). *See Mugica v. Helena Chem.*

*Co. (In re Mugica)*, 362 B.R. 782, 790 (Bankr. S.D. Tex. 2007). Mandatory abstention does not apply, but the Court will permissively abstain and remand.

I. **MANDATORY ABSTENTION**

The Trustee argues that the Court must abstain under 28 U.S.C. § 1334(c)(2). (ECF No. 2 at 6–9). Section 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). The Fifth Circuit described a four-part mandatory abstention test:

> (1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding . . . ; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.

*The Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 728–29 (5th Cir. 2014) (citation omitted). The four elements are conjunctive. Each must be satisfied. *See Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997) (holding that abstention is mandatory if "the following requirements are met.").

The third element has not been satisfied. Mandatory abstention requires the commencement of a state court action prior to the bankruptcy proceedings. *Hous. Baseball Partners v. Comcast Corp. (In re Hous. Reg'l Sports Network, L.P.)*, 514 B.R. 211, 214 (Bankr. S.D. Tex. 2014) (citing *Special Value Continuation Partners, L.P. v. Jones,* 2011 WL 5593058, at *2 (Bankr. S.D. Tex. Nov. 10, 2011)). Speedcast filed for bankruptcy on April 23, 2020. (Case No. 20-32243, ECF No. 1). The Trustee commenced this action in in the 61st Judicial District

Court of Harris County, Texas on January 7, 2022. (ECF No. 20 at 5). Because the state court action commenced after the bankruptcy proceedings, abstention is not mandatory.

**II.   PERMISSIVE ABSTENTION**

The Court may discretionarily decline to hear this proceeding under § 1334(c)(1). Similarly, the Court may remand on equitable grounds under § 1452(b). *See Hous. Reg'l*, 514 B.R. at 215. Courts examine the following factors in deciding whether to abstain or remand:

(1) Effect or lack thereof on the efficient administration of the estate if the court remands or abstains;

(2) Extent to which state law issues predominate over bankruptcy issues;

(3) Difficult or unsettled nature of applicable law;

(4) Presence of related proceeding commenced in state court or other non-bankruptcy proceeding;

(5) Jurisdictional basis other than § 1334;

(6) Degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) The substance rather than the form of an asserted core proceeding;

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;

(9) The burden of the bankruptcy court's docket;

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) The existence of a right to a jury trial;

(12) The presence in the proceeding of non-debtor parties;

(13) Comity; and

(14) Possibility of prejudice to other parties in the action.

*Id.* (citing *Special Value,* 2011 WL 5593058, at *7–8).

### A. Factors Favoring Discretionary Abstention and Remand

Factors 1, 2, 3, 6, 7, and 13 favor abstention and remand.

Factor 1, estate administration, supports abstention and remand. The Court confirmed Speedcast's chapter 11 Plan on January 22, 2021. Speedcast's Plan became effective on March 11, 2021. (Case No. 20-32243, ECF No. 1498 at 1). As a result, there is no longer a bankruptcy estate to administer. *See, e.g.*, *Hallmark Cap. Grp. v. Pickett (In re Pickett)*, 362 B.R. 794, 798 (Bankr. S.D. Tex. 2007) ("Without a bankruptcy estate in existence, this factor favors abstention."); *Lain v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 732 (Bankr. W.D. Tex. 2017) ("Factor 1 . . . weighs in favor of abstention and remand. . . . [T]here is no longer a bankruptcy estate to administer in the Debtors' bankruptcy case."). Further, as part of Speedcast's Plan, the Court approved proceeding in state court: "[T]he Bankruptcy Court's jurisdiction with respect to the Litigation Trust Causes of Action and the Class 3 Trust Causes of Action shall not be exclusive." (Case No. 20-32243, ECF No. 1394 at 16). The Court's abstention will not affect the administration of the estate.

Factor 2, state law issues, supports abstention and remand as all claims in this suit are state law claims. The Trustee alleges that Mr. Shaper breached his fiduciary duty to the bankruptcy estate, but the claim is a state law claim for breach of fiduciary duty, not a claim involving substantive bankruptcy law.

Factor 3, the difficult or unsettled nature of the law, supports abstention and remand. Mr. Shaper argues that "[t]he Texas Supreme Court 'has not expressly decided whether Texas recognizes a cause of action for aiding and abetting.'" (ECF No. 8 at 36). While this Court made an *Erie* guess in *Houston Regional Sports Network*, 547 B.R. 717, 758–59 (Bankr. S.D. Tex. 2016),

that aiding and abetting is a cause of action under Texas law, to the extent this question is unsettled, it is best answered by a Texas court.

For the same reasons as factor 1, factor 6, degree of relatedness to the bankruptcy case, supports abstention and remand. Speedcast's confirmed Plan allows for the separate adjudication of these claims in state court. (Case No. 20-32243, ECF No. 1394 at 16).

Factor 7, the substance of an asserted core proceeding, supports abstention and remand. Courts have found that this factor weighs in favor of abstention and remand when the proceeding is non-core. *See, e.g.*, *Hous. Reg'l*, 514 B.R. at 216. The parties dispute whether this matter is core. (*See* ECF Nos. 20; 21; 22). Specifically, the parties dispute whether the Court has "arising in" jurisdiction over the Trustee's claims.

A proceeding "arises in" a case under title 11 if it is "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). This category of proceedings is "core" under § 157(b). *Id.* ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

Many courts have examined the scope of "arising in" jurisdiction. The fundamental question is whether the claim is of a type that can only exist in a bankruptcy case. *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930–31 (5th Cir. 1999) (finding a dispute concerning court-appointed professionals' fees to be "inseparable from the bankruptcy context." The Fifth Circuit noted that it is a "*sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police . . . debtors-in-possession . . . who are responsible for managing the debtor's estate in the best interest of creditors."); *Gupta v. Quincy*

*Med. Ctr.*, 858 F.3d 657, 664–65 (1st Cir. 2017) ("[T]he fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise only in the context of a bankruptcy case."); *Dune*, 575 B.R. at 727 ("'[C]ore' jurisdiction exists if the claims are of the type that can only exist in a bankruptcy case."); *WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 609 (S.D. Tex. 1999) ("If '[i]t is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court,' it is not a core proceeding." (quoting *Wood,* 825 F.2d at 97) (internal citations omitted)); *id.* at 612 ("[The test] is whether the claim would stand alone from the bankruptcy case."); *Schmidt v. Nordlicht*, No. H-16-3614, 2017 WL 526017, at *5 (S.D. Tex. Feb. 9, 2017) ("[W]hat matters is that these same claims could have been filed and litigated regardless of whether [the debtor] had gone bankrupt.").

Claims for breach of fiduciary duty may arise outside of a bankruptcy case. *See, e.g.*, *Morrison v. Amway Corp. (In re Morrison)*, 409 B.R. 384, 390 (S.D. Tex. 2009) (determining that a claim for breach of fiduciary duty is non-core because it is a state law cause of action that can arise outside of bankruptcy); *Wash. Mut., Inc. v. XL Specialty Ins. Co., (In re Wash. Mut., Inc.)*, No. 08-12229, 2012 WL 4755209, at *2 (Bankr. D. Del. Oct. 4, 2012) ("[B]reach of fiduciary duty claims are ordinary state law causes of action of the type that are brought in state courts across the country with no connection to the Bankruptcy Code or a bankruptcy case."); *Mellon v. Del. & Hudson Ry. Co.* (*In re Del. & Hudson Ry. Co.*), 122 B.R. 887, 894 (D. Del. 1991) (determining an action against directors for breach of fiduciary duty to be non-core where it existed prior to and independent of the bankruptcy filing). Thus, the Court does not have "arising in" jurisdiction over regular breach of fiduciary duty claims. However, a claim for breach of fiduciary duty to the bankruptcy estate cannot exist outside of the bankruptcy context. The Trustee's first cause of action asserts that Mr. Shaper breached fiduciary duties to the bankruptcy estate and to Speedcast

and its creditors. The Court has "arising in" jurisdiction over the Trustee's first cause of action as it pertains to Mr. Shaper's alleged breach of fiduciary duty to the bankruptcy estate.

Even though the claim alleging a breach of fiduciary duty to the bankruptcy estate is a core proceeding, (i) it is only a small portion of the Trustee's claims; (ii) its adjudication does not involve substantive bankruptcy issues; and (iii) the state action is not "an end-run around the proper bankruptcy channels" because the Court permitted claims against Mr. Shaper's actions during the pendency of the bankruptcy to be filed in state court. *Sabre Techs., L.P. v. TSM Skyline Exhibits, Inc.*, No. H-08-1815, 2008 WL 4330897, at *5 (S.D. Tex. Sept. 18, 2008) (discussing an "end-run" of the proper bankruptcy channels in the context of the second factor, which is also applicable to this factor) (quoting *Sears Petroleum & Transp. Corp. v. Burgess Contr. Servs. Inc.*, 417 F. Supp. 2d 212, 222 (D. Mass. 2006)) (internal quotations omitted). The overwhelming state law substance of the single core portion of the Trustee's claims favors abstention and remand.

Factor 13, comity, favors abstention and remand. The issues in this lawsuit are substantively state law issues. Mr. Shaper argues that the fact that foreign law may apply to certain claims or defenses weighs against remand. (ECF No. 21 at 28). This argument holds no water—Texas state courts and this Court are capable of interpreting Australian law if necessary.

### B.      Factors Weighing Against Discretionary Abstention and Remand

Factors 4, 5, and 8 favor retention.

Factor 4, presence of related proceedings in state court, favors retention. The only alleged related proceeding in state court is the present dispute that Mr. Shaper removed to this Court. (ECF Nos. 20 at 14; 22 at 13). The Trustee argues that the action had been originally filed in state court, and so this factor favors abstention: "[T]he best interpretation of this factor is that it counsels for abstention when a state court action has been filed and removed . . . ." (ECF No. 22 at 13). Other

courts have found that a removed action may constitute the related proceeding commenced in state court. *See, e.g.*, *McVey v. Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 191 (Bankr. S.D. Tex. 2014) ("Plaintiffs initially sued the Defendants in Harris County District Court. . . . This factor therefore favors abstention."). The Court disagrees. In the removal and abstention context, the related proceeding cannot be the proceeding that was removed to federal court. Otherwise, this factor would always weigh in favor of abstention. Because there is no other related proceeding commenced in state court nor is there a related non-bankruptcy proceeding, this factor favors retention.

Factor 5, the jurisdictional basis other than § 1334, favors retention. The parties are diverse and the amount-in-controversy is likely satisfied based on the damages asserted. The Trustee argues that because Mr. Shaper is a Texas resident, he would have been prevented from removing on diversity grounds under the forum-defendant rule. (ECF No. 22 at 13). However, the Court interprets this factor to question the jurisdictional basis other than § 1334 by which the matter could be in federal court, not the jurisdictional basis other than § 1334 by which the removing party could otherwise remove the case from state court. *See Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020) ("We begin by recognizing that the forum-defendant rule is a procedural rule and not a jurisdictional one."); *Doe v. Archdiocese of New Orleans Indem., Inc.*, No. CV 20-1338, 2020 WL 4593443, at *3 n.5 (E.D. La. Aug. 11, 2020) (finding an independent basis for federal jurisdiction under § 1334(c)(2) despite the applicability of the forum-defendant rule). The Trustee could assert diversity jurisdiction if the Trustee wished to pursue her claims in federal court.[1]

---

[1] The Trustee argues that this factor weighs in favor of abstention under the Court's ruling in *Mugica*. (ECF No. 22 at 7). In *Mugica*, the Court found that a defendant was time-barred from asserting diversity jurisdiction in a removal action under 28 U.S.C. § 1446(b). *Mugica*, 362 B.R. at 792 ("More than one year had passed before the parties became sufficiently diverse to invoke diversity jurisdiction. The Court rejects Defendant's assertion that it may

Factor 8, feasibility of severance, supports retention. The core claim—the breach of fiduciary duty to the bankruptcy estate—is difficult to sever from the breach of fiduciary duty to Speedcast. Although the core claim is a state law claim and does not require analysis of substantive bankruptcy issues, it is still core under "arising under" jurisdiction, and the parties could potentially be forced to litigate substantially the same issue both in bankruptcy court and in state court were the Court to retain the core portion. The Court may avoid this unseemly outcome if the Court remands the entire matter, including the core portion, back to state court.

C. **Neutral Factors**

Factors 9, 10, 11, 12, 14 are neutral.

Factor 9, docket congestion, is neutral because this Court's docket is neither so overwhelming nor so light as to weigh for or against abstention and remand. Moreover, the parties have made a jury demand. If retained, this case would ultimately be borne by the district court. There is no evidence regarding the district court's docket compared to the state court's that would suggest that one forum is more or less congested than the other.

Factor 10, forum shopping, is neutral. There is a distinction between untoward forum shopping and permissible forum shopping when selecting an appropriate venue. No untoward forum shopping occurred here.

Factor 11, existence of right to a jury trial, is neutral (or possibly favors abstention). Because the Court assumes the reference will be withdrawn, a jury trial can be held in either the

---

now retain federal jurisdiction based on diversity jurisdiction."). In later examining the § 1334(c)(2) elements, the Court found that there was no independent basis for federal jurisdiction other than § 1334(b). *Id.* at 793 ("As to the four factors stated above, the Court has already established that the claims have no independent basis for federal jurisdiction other than § 1334(b) . . . ."). The Court did not assess whether the plaintiffs could have pursued their claim at that time in federal court under diversity jurisdiction.

12 / 14

United States District Court for the Southern District of Texas or Texas state court.  To the extent that the reference is not withdrawn, the jury issue favors abstention.

Factor 12, presence of non-debtor parties, is neutral.  Both parties to this lawsuit are non-debtors.  However, this lawsuit concerns actions Mr. Shaper took while a director of the Debtor, and the Litigation Trustee was appointed to pursue claims on behalf of the Debtor.

Factor 14, prejudicial effect, is neutral.  No party has sufficiently demonstrated that it would suffer prejudice if the Court rules against, or in favor of, abstention and remand.

### D. Equitable Application of Permissive Abstention Doctrine

A numerical weighting of the factors favors abstention. Six factors favor abstention, three factors favor retention, and five factors are neutral.  These factors considerably favor abstention.

More important than the numerical count of factors weighing for and against abstention, the Court must determine which arguments are of greater importance and persuasion.  *See Special Value*, 2011 WL 5593058, at *10; *Off. Comm. of Unsecured Creditors of Schlotzsky's, Inc. v. Thornton (In re Schlotzsky's, Inc.)*, 351 B.R. 430, 435 (Bankr. W.D. Tex. 2006) (determining that "we must avoid losing the forest for the trees" in deciding whether to abstain).  Factors 1, 6, and 7 are of significant importance and persuasion.

These factors are centered on the question of whether the legal issues in this case are best resolved in a bankruptcy court.  This suit concerns state law claims over almost entirely non-bankruptcy issues.  The only core portion of the Trustee's claim is a state law issue that is easily assessed without involving substantive bankruptcy law.  The Texas state court will not find itself in a quagmire of bankruptcy law in adjudicating whether Mr. Shaper breached his fiduciary duties to the bankruptcy estate.

On balancing the permissive abstention factors, abstention is warranted. The Court will abstain under § 1334(c)(1) and remand to state court under § 1452(b).

## CONCLUSION

A separate order will be entered.

SIGNED 09/15/2022

Marvin Isgur
United States Bankruptcy Judge